IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-CV-679-M

| | | |
|---|---|---|
| JAMAL MARCAL MCCLAM PRETTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER AND |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| | ) | |
| CAVA GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Plaintiff Jamal Pretty's application to proceed *in forma pauperis*, [DE-2], and for frivolity review of the complaint, [DE-1], pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff has demonstrated appropriate evidence of inability to pay the required court costs, his application to proceed *in forma pauperis* is allowed, and it is recommended that Plaintiff's retaliatory termination claim be allowed to proceed and the remaining claims be dismissed without prejudice.

I. **Standard of Review**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court shall dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2)(B)(i–iii); *see Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (explaining Congress enacted predecessor statute 28 U.S.C. § 1915(d) "to prevent abuse of the judicial system by parties who bear none of the ordinary financial disincentives to filing meritless claims"). A case is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *McLean v. United States*,

566 F.3d 391, 399 (4th Cir. 2009) ("Examples of frivolous claims include those whose factual allegations are 'so nutty,' 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.'"). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327–28.

To state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . .'" *Twombly*, 550 U.S. at 555. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Id.*

In the present case, Plaintiff is proceeding *pro se*, and pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, the principles requiring generous construction of *pro se* complaints are not without limits; the district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In interpreting a *pro se* complaint the court's task is not to discern the plaintiff's unexpressed intent, but what the words in the complaint mean. *Atkinson v. Nat'l Credit Sys., Inc.*, No. 5:23-CV-640-D, 2024 WL 1309185, at *1 (E.D.N.C. Mar. 27, 2024) (citing *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc) (holding that a "liberal interpretation" of a complaint does not warrant a "complete rewriting") & *Brock v.*

*Carroll*, 107 F.3d 241, 243 n.3 (4th Cir. 1997)).

## II. Discussion

Plaintiff filed a form complaint against Cava Group, Inc., his former employer, alleging employment discrimination in the form of harassment, wrongful termination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. [DE-1]. Plaintiff also attached a narrative in support of the complaint, [DE-1-1], correspondence with other employees of Defendant related to the claims, [DE-1-2], and a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") issued September 16, 2025, [DE-1-3].[1] Plaintiff seeks compensatory, emotional distress, and punitive damages of $390,000. [DE-1] at 6.

In a form complaint, Plaintiff alleges that on or about August 10, 11, 18, and 24, 2025, he experienced discrimination based on race and that he was "involved in [a] situation where I [was] purposely left out, while 3 people all his family received gifts and praise[.]" *Id.* at 4. In the attached narrative complaint, Plaintiff alleges, in relevant part, that

> [he] was employed at CAVA in Raleigh, North Carolina. On August 10, 2024, Plaintiff was subjected to harassment and hostile behavior by a manager, Brauliana, including a forced conversation unrelated to work performance and escalating aggression. Following this incident, Plaintiff experienced retaliation, including wrongful termination. Plaintiff contends that the termination was motivated by retaliation and hostile work environment, in violation of Title VII.

[DE-1-1]. Plaintiff made a "Formal Complaint" to Cava reporting "nepotism and policy violations" involving other employees, whom Plaintiff believed were receiving preferential treatment in violation of Cava's policies. [DE-1-2] at 1–2. Plaintiff also complained to Cava about being retaliated against for making the above complaint, and about another employee miming

---

[1] Given Plaintiff's *pro se* status, the court must consider these documents when considering whether his complaint states a plausible claim for relief. *See Holley v. Combs*, No. 22-6177, 2025 WL 1035288, at *2 (4th Cir. Apr. 8, 2025) (citing *Garrett v. Elko*, 120 F.3d 261, 1997 WL 457667, at *1 (4th Cir. 1997) ("[I]n order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.")).

shooting a gun with his hand at Plaintiff, which Plaintiff found threatening and intimidating. *Id.* at 3–4. Finally, Plaintiff complained to Cava about a conversation he had with his manager after he learned that mothers would be given Mother's Day off, he questioned whether fathers would be given Father's Day off, and the manager dismissed his question by stating that it was a day for men to work harder, which he thought was dismissive and sexist. *Id.* at 5. Plaintiff believed he was retaliated against for his complaints by having his schedule changed, receiving two write-ups, and being terminated. [DE-1-1] at 1; [DE-1-2] at 3–10.

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discimin[ating] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C § 2000e-2(a). Here, Plaintiff checked the box alleging race discrimination, but there are no factual allegations in the complaint that constitute direct evidence of discrimination based on race. "Absent direct evidence [of discrimination], the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)), *aff'd*, 566 U.S. 30 (2012). "Although an employee need not prove a prima facie case of discrimination to survive a motion to dismiss, he must state a plausible right to relief." *Ofoche v. Apogee Med. Grp., Va., P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020) (citing *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017)). Plaintiff has failed to allege any facts that would support a claim that he was treated differently from similarly situated employees based on his race, and his race discrimination claim should, therefore, be dismissed.

To the extent Plaintiff's allegations regarding his manager's perceived sexist comments related to Mother's Day and Father's Day could be construed as a sex discrimination claim, Plaintiff failed to allege he actually suffered an adverse action. In the Title VII discrimination context, an adverse action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Plaintiff's allegation that his manager said fathers would not be given Father's Day off is insufficient to state a sex discrimination claim, where Plaintiff did not allege that he was actually denied time off on Father's Day after women were given time off on Mother's Day. Furthermore, denial of one day off generally does not constitute a "significant change in employment status" equivalent to a firing, failure to promote, or significant change in benefits, and Plaintiff has made no allegation that could support a finding otherwise. *See Hoyle*, 650 F.3d at 337; *Gaines v. City of Dallas*, No. 3:17-CV-1867-L, 2018 WL 7078541, at *4 (N.D. Tex. Dec. 28, 2018) ("Although adverse employment actions include decisions such as granting leave, Plaintiff does not actually allege that her request for one day off was denied, and even if it was, 'a single denial of leave . . . does not constitute an adverse employment action.'") (citations omitted), *report and recommendation adopted*, 2019 WL 266855 (N.D. Tex. Jan. 18, 2019). Accordingly, any sex discrimination claim should be dismissed.

Next, Plaintiff has failed to plausibly allege a hostile work environment claim based on harassment. A hostile work environment is characterized as a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys.*,

5

*Inc.*, 510 U.S. 17, 21 (1993)). To bring a hostile work environment claim, a plaintiff must allege facts that tend to show "the offending conduct (1) was unwelcome, (2) was because of [his] sex [or race], (3) was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment, and (4) was imputable to [his] employer." *Berry v. S. States Coop., Inc.*, No. 5:17-CV-635-FL, 2018 WL 4365499, at *2 (E.D.N.C. Sept. 13, 2018) (quoting *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011)). Critically, an employee must also show that his protected characteristic under Title VII was the "but for" cause of the alleged harassment. *Coleman v. Altec, Inc.*, No. 5:16-CV-954-D, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (citing *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 142 (4th Cir. 2007)). "The standard for proving an abusive work environment is intended to be a high one because it is designed to 'filter out complaints attacking the ordinary tribulations of the workplace.'" *Dortch v. Cellco P'ship*, 770 F. App'x 643, 645 (4th Cir. 2019) (citation omitted).

Here, aside from the single checked box on the form complaint, Plaintiff has alleged no facts related to race whatsoever. Additionally, the lone comment related to Father's Day is not sufficiently severe or pervasive to create an abusive working environment, and the co-worker miming a gun at Plaintiff and the text messages sent by Plaintiff's manager were not alleged to be motivated by any protected characteristic. *See E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010) ("Activities like simple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct.") (citation omitted); *Williams v. Pitt Cnty. Bd. of Educ.*, No. 4:18-CV-32-BR, 2020 WL 1503463, at *4 (E.D.N.C. Feb. 18, 2020) ("In the specific incidents described by Williams, there are no allegations that Curry or Weathington used slurs or other incendiary language and no allegations from which the court could infer that the offensive conduct was motivated by age or race.") (citations omitted). In other words,

6

the standard for successfully raising a hostile work environment claim is a high one, and Plaintiff has not met it. Consequently, Plaintiff's hostile work environment claim should be dismissed.

Finally, Plaintiff's Title VII retaliatory termination claim should be allowed to proceed at this time. "A Title VII retaliation claim requires that a plaintiff allege that [he] '[1] engaged in protected activity, [2] that [his] employer took an adverse employment action against [him], and that [3] there was a causal link between those events.'" *Neil v. Warren Cnty. Sch.*, No. 5:20-CV-595-FL, 2022 WL 4467671, at *4 (E.D.N.C. Sept. 26, 2022) (quoting *Savage v. Maryland*, 896 F.3d 260, 276 (4th Cir. 2018)). "Title VII protects not only complaints about 'employment actions actually unlawful under Title VII but also employment actions [the plaintiff] reasonably believes to be unlawful.'" *Id.* (quoting *Boyer-Liberto*, 786 F.3d at 282). And, as in the case of Title VII discrimination claims, an adverse action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle*, 650 F.3d at 337.

Plaintiff asserted that because of his complaints of nepotism and policy violations, the Father's Day incident, and the gun miming incident, he was retaliated against with schedule changes, two write-ups, and termination. [DE-1-1]; [DE-1-2] at 3–10. Plaintiff's complaints of nepotism and related policy violations are not protected activity and cannot form the basis of a retaliation claim. *See Adams v. Pettway*, No. 2:23-CV-1765-HDM, 2025 WL 3499054, at *6 (N.D. Ala. Dec. 5, 2025) (complaints of nepotism did not constitute protective activity under Title VII); *Brown v. Univ. of N.C. Health Care Sys.*, No. 1:20-CV-0086, 2021 WL 512222, at *8 n.10 (M.D.N.C. Feb. 11, 2021) (same). Plaintiff being written up for reporting the co-worker who mimed a gun to Plaintiff cannot form the basis of a retaliation claim because "a write up itself is

not an adverse employment action." *Phillips v. WakeMed*, No. 5:20-CV-00626-M, 2021 WL 4891741, at *8 (E.D.N.C. Oct. 19, 2021), *aff'd,* No. 21-2301, 2022 WL 1686672 (4th Cir. May 26, 2022). Likewise, schedule changes do not generally constitute an adverse employment action for purposes of a retaliation claim, and Plaintiff has alleged no facts to provide the requisite context from which the court could find that the schedule changes constituted a materially adverse change to the terms and conditions of his employment. *See Odom v. City of Columbia Police Dep't*, No. CV 3:15-4313-MGL-SVH, 2017 WL 9275138, at *6 (D.S.C. Feb. 16, 2017) ("The Fourth Circuit has routinely found that employer's decisions about schedule changes are insufficient to constitute adverse employment actions.") (citing *Parsons v. Wynne*, 221 F. App'x 197, 199 (4th Cir. 2007) (adverse performance evaluation and change in work schedule were not materially adverse actions on a retaliation claim)), *report and recommendation adopted*, 2017 WL 2952969 (D.S.C. July 11, 2017); *Ellis v. Kanawha Cnty. Pub. Libr.*, No. 2:15-CV-05698, 2016 WL 5387648, at *8 (S.D.W. Va. Sept. 26, 2016) ("In the absence of circumstances demonstrating their significance to the individual employee, changes to an employee's work schedule generally are not considered retaliatory acts under Title VII."). Accordingly, Plaintiff has failed to state a claim for retaliation based on schedule changes and write ups.

Lastly, giving the *pro se* complaint the liberal construction it is due, Plaintiff's retaliatory termination claim is sufficiently stated to survive frivolity review. Courts have "taken an expansive view of protected oppositional activity, including 'voicing one's opinions in order to bring attention to an employer's discriminatory activities' and 'complaining to one's supervisors about suspected violations.'" *Gates v. Waffle House Corp.*, No. 4:18-CV-00140-BO, 2019 WL 613555, at *6 (E.D.N.C. Jan. 9, 2019) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543–44 (4th Cir.

8

2003)) (cleaned up), *report and recommendation adopted*, 2019 WL 615364 (E.D.N.C. Feb. 13, 2019). A plaintiff may attempt to demonstrate that a protected activity caused an adverse action by demonstrating "that the adverse act bears sufficient temporal proximity to the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). Both the protected activity and adverse action here were alleged to have occurred in August 2025. [DE-1] at 4; [DE-1-2] at 3–10. "Although not conclusive, temporal proximity between the protected activity and the adverse action often is sufficient for a 'prima facie case of causality.'" *Diede v. UNC Healthcare*, No. 5:16-CV-00788-BR, 2017 WL 745731, at *3 (E.D.N.C. Jan. 20, 2017) (citing *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006)), *report and recommendation adopted*, 2017 WL 744559 (E.D.N.C. Feb. 24, 2017). Thus, Plaintiff's allegations of complaints to Cava regarding harassment and what he perceived to be discriminatory activities in relatively close proximity to his termination, [DE-1-2], are sufficient to allow Plaintiff's retaliatory termination claim to proceed past initial review, and any potential defenses are more appropriately considered on a fully briefed Rule 12 motion.

### III.     Conclusion

For the reasons stated above, Plaintiff's application to proceed *in forma pauperis* is allowed, and it is recommended that Plaintiff's retaliatory termination claim be allowed to proceed and the remaining claims be dismissed without prejudice.[2]

IT IS HEREBY DIRECTED that a copy of this Memorandum and Recommendation be served on Plaintiff. You shall have until **January 27, 2026** to file written objections to the

---

[2] *See e.g., Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 623 (4th Cir. 2015) (where it is not clear that "no amendment in the complaint could cure the defects in the plaintiff's case," then dismissal is without prejudice, with opportunity for plaintiff to seek leave to amend is appropriate).

Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline will bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright*, 766 F.2d at 846–47.

Submitted, this the 13th day of January, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge